JOHNSON, APPELLANT,.v. YOUNG ET AL., APPELLEES.

1. MINING CLAIMS.

The acquisition of title to a mining claim upon public land is conditioned upon discovery and location; and the condition upon which title may be held until patent issues, is the performance of the annual development work.

2. MINING CLAIMS—ABANDONMENT AND RE-LOCATION.

Upon failure to perform the annual development work, the territory becomes abandoned in the sense that it is subject to location after such failure and before resumption of work thereon, in the same manner as other unappropriated domain, and is subject to be taken by the owners of a junior location by the filing of an additional certificate under the statute.

3. MINING CLAIMS—ADDITIONAL CERTIFICATE.

The statute having provided that an additional certificate of location may be filed for certain purposes, such certificate, if made under proper conditions, is effectual for all purposes enumerated in the act, whether mentioned or not.

4. BURDEN OF PROOF—FORFEITURE.

The burden of proving a forfeiture is upon him who asserts it.

*Appeal from the District Court of Gunnison County.*

Mr. L. C. ROCKWELL, for appellant.

Messrs. THOMAS BROS. & WEGENER, Mr. ALEXANDER GULLETT and Mr. C. J. HUGHES, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

This is an action brought upon an adverse proceeding to determine the right to the possession and occupancy of a piece of ground claimed by appellant as a portion of, and included within, the surface boundaries of the Excelsior No. 1 lode mining claim, and by appellees as a portion of, and included within, the surface boundaries of the Black Queen lode mining claim.

The Excelsior No. 1 was discovered July 28, 1881, and

VOL. XVIII—40

the location certificate was filed for record August 18, 1881. The Black Queen was discovered July 29, 1881, and location certificate filed October 10, 1881.

The ground in conflict is that portion of the south end of Excelsior No. 1 over which the Black Queen's north side-line extends. This ground, was by reason of priority of location, a portion of Excelsior No. 1; and the right of the Black Queen owners to it depends upon the question of fact, whether the annual labor was performed upon the Excelsior lode in 1883 and 1885; and if not, whether the acts of the Black Queen owners in filing additional or amended location certificates after such failure and before a resumption of work thereon, was an effectual re-location of that portion of the Excelsior No. 1 lode claim now in controversy.

Error is assigned upon the refusal to give certain instructions asked by appellant, and upon the giving of certain instructions asked by appellees. The main contention is presented by instruction No. 17, given at the request of appellees, which is as follows:

" If you find from the evidence that the Black Queen was a valid existing mining location, and that the annual labor requisite to keep up the same had been performed, and that the owners of said Black Queen location filed an amended location certificate at any time while their holding was in this condition, and at a time when the Excelsior No. 1 lode had been abandoned by reason of the failure of the owners thereof during the preceding year to do their annual assessment work, and before such owners had resumed work upon the location so abandoned, and that such amended or additional location certificate filed under the circumstances stated, covered the ground in controversy in this action, such filing would give the owners of the Black Queen location a valid title to the ground in controversy, and your verdict should be in their favor, provided you further find from the evidence that such owners kept up the annual assessment work until this action was brought."

We think that the law is therein fairly stated, and that

it correctly enunciates the conditions under which a mining claim is subject to re-location as abandoned property, and one of the acts that constitute a valid re-location.

The acquisition of title to a mining claim is conditioned upon discovery and location ; and the condition upon which title thereto may be held until patent is issued is the performance of the annual development work. Sec. 2324 of the Rev. Statutes of the United States requires that " Not less than one hundred dollars worth of labor shall be performed or improvements made during each year, * * * and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to re-location in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure, and before such location." * * *

The territory theretofore segregated by discovery and location becomes abandoned in the sense that it is subject to location after such failure, and before resumption of work thereon, in the same manner as other unappropriated public mineral domain, and is subject to be taken by the owners of a junior location under sec. 2409 of the General Statutes, p. 724, which provides :

" If at any time the locator of any mining claim * * * shall be desirous * * * of taking in any part of an overlapping claim which has been abandoned * * * such locator, or his assigns, may file an additional certificate," * * * etc.

The case of *Omer v. Soper*, 11 Colo. 380, is relied on as laying down a doctrine at variance with this conclusion, but we think the cases are clearly distinguishable. In that case the locators of the Golden Bell lode, were in actual possession, working and developing the lode. They were not in default under section 2324 of the Revised Statutes, nor had they in any manner abandoned the Golden Bell lode. The Verde claimants attempted under these conditions to re-locate the same lode by surveying over fourteen hundred feet of it, including the discovery shaft and workings of the Golden

Bell owners, and while these owners were in actual possession. The court says, at page 388:

" We observe, in the first place, that the record shows the claim of the appellees did not originate in this survey; and, in the second, that if it did it was invalid, for the reason that, under the mining laws and decisions, title to a lode in the actual possession of citizens who claim to own it, and who are engaged in developing it, cannot be initiated by other persons by a survey and the recording of a location certificate."

And further, on page 390:

" The result of this review of the case upon the whole record is substantially to narrow the issues to the single question whether a claim of ownership to mining territory which has been appropriated by the discoverers of a lode therein, made in the manner and under the circumstances above stated, can be initiated by other persons, before default or forfeiture on the part of the discoverers, so as to make it capable of ripening into a valid title, and to answer the same in the negative."

The default of the Golden Bell claimants consisted in not filing a location certificate within the three months. The court in that case, therefore, in effect held that, since the Golden Bell people were in the actual and legal possession of the lode and no forfeiture or abandonment had occurred at the time of the Verde location, the Verde owners could not acquire title thereto under these conditions by re-location or otherwise. The language of the court should be read in the light of the facts in that case, and in so far as any expressions are found therein that may seem to contradict the conclusion we have arrived at, they should be modified.

Much stress is laid upon the fact that the additional certificates filed February 23d and June 16th, 1884, did not in terms specify that they were filed for the purpose of taking in over-lapping abandoned ground. We think this objection is without merit. The statute provides that additional location certificates may be filed for certain purposes; it does not

require that such purposes should be expressed in the certificate, and in our opinion such specification is not essential.

The filing of such certificate, if made under proper conditions, is effectual for all the purposes enumerated in the statute, whether such purposes are therein mentioned or not.

The essential condition in this case to enable the Black Queen owners to take in the ground in controversy, was the failure to do the annual assessment work on the Excelsior No. 1 lode for the year 1883 and for the year 1885.

There was conflicting testimony introduced on the trial as to whether such work had been done—some positive in its character that the work had been done for these years respectively. Appellant requested the court to instruct the jury as follows :

No. 4. " The court instructs the jury the law does not presume a forfeiture, and if the plaintiffs claiming that part of the Excelsior No. 1 lode became forfeited and open to be re-located, which they included and embraced within their amended or additional location certificates filed in 1884 and 1886, the burden of proving the annual labor was not done on the Excelsior No. 1 lode is on plaintiffs, and unless they have shown you by a fair preponderance of evidence the work was not done, then you are to determine that question in favor of defendant." This was refused.

This instruction should have been given. It expresses the rule as to the burden of proof on the question of forfeiture very favorably to the appellees. While there is some conflict of authority as to the necessity of specially pleading a forfeiture, there is no exception as to the rule, of which we are advised, that relieves a party asserting a forfeiture from the burden of proving it.

Justice Field, in delivering the opinion of the court in the case of *Hammer v. Garfield Mining and Milling Company*, 130 U. S., p. 301, says :

" As to the alleged forfeiture set up by defendant, it is sufficient to say that the burden of proving it rested upon him ; that the only pretense of a forfeiture was that sufficient work,

as required by law, each year, was not done on the claim in 1882; and that the evidence adduced by him on that point was very meager and unsatisfactory, and was completely overborne by the evidence of the plaintiff. *Belk v. Meagher*, 104 U. S. 279. A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law."

We think, therefore, the refusal to give instruction No. 4 was error, but appellees contend that it was without prejudice because it is admitted that no work was done in 1884. And, it appearing that appellant re-located the lode as the Sunshine lode in 1885, that the work done in 1885, if any, was under such re-location, and cannot inure to the benefit of the Excelsior No. 1 lode; and that they filed the amended certificate in 1886 before work was resumed by appellant or his grantors on the Excelsior No. 1 lode as such. We cannot agree with counsel for appellees on this proposition. If the attempted re-location under the name of the Sunshine lode was made by appellant, as he claims, to protect his rights in the Excelsior No. 1, and to preserve the claim from re-location by others until he could obtain title to the same through the deeds of the original owners, and the work was done in order to protect the lode under both titles, we think it should inure to the benefit of the original claim, as afterwards deeded to him.

We do not wish to be understood as holding that less than one hundred dollars' worth of work annually will suffice to continue the ownership of a lode claim; but that the burden of showing that the full amount was not done in any particular year is upon the party seeking to avail himself of a forfeiture for that reason.

The refusal to give instruction No. 4 was an error prejudicial to appellant, and compels the reversal of the judgment. The judgment is reversed and cause remanded.

*Reversed.*